UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

| | |
|---|---|
| HUBERT R. FISHER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 1:05-CV-102 |
| v. ) | |
| ) | Judge Curtis L. Collier |
| ) | |
| DR. FRANCES HARVEY, Secretary of the ) | |
| Army, ) | |
| ) | |
| Defendant. ) | |

## **M E M O R A N D U M**

This is a case arising under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. §§ 2000e *et seq.*, and Section 501 of the Rehabilitation Act of 1973 ("Rehabilitation Act"), as amended, 29 U.S.C. §§ 791, *et seq.* Both Plaintiff Hubert R. Fisher ("Plaintiff") and Defendant Dr. Francis A. Harvey, Secretary of the Army ("Defendant") have filed motions for partial summary judgment (Court File Nos. 30, 32).

The parties have submitted memoranda and exhibits in support of and in opposition to these motions (Court File Nos. 31, 33, 40, 41, 42, 47 and exhibits thereto). The Court has considered all of the foregoing in making its decision regarding the motions for summary judgment. Taking into consideration the foregoing and the applicable law, for the following reasons, the Court will **GRANT** Defendant's motion for partial summary judgment on Plaintiff's claims based on constructive discharge (Court File No. 30) and will **DENY** Plaintiff's motion for partial summary judgment on his claims for disclosure of confidential information under the ADA and Rehabilitation

Act (Court File No. 32).

I.     **STANDARD OF REVIEW**

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Initially, the burden is on the moving party to conclusively show no genuine issues of material fact exist, *Leary v. Daeschner*, 349 F.3d 888, 897 (6th Cir. 2003), and the Court must view the evidence and draw all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986). However, the nonmoving party is not entitled to a trial merely on the basis of allegations, but must come forward with some significant probative evidence to support its claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986). If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to summary judgment. *Id.* at 323, 106 S. Ct. at 2552.

The Court determines whether sufficient evidence has been presented to make the issue of fact a proper jury question, but does not weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986); *Weaver v. Shadoan*, 340 F.3d 398, 405 (6th Cir. 2003). The standard for summary judgment mirrors the standard for directed verdict. *Anderson*, 477 U.S. at 250, 106 S. Ct. at 2511. The Court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail

2

as a matter of law." *Id.* at 251-52, 106 S. Ct. at 2512. There must be some probative evidence from which the jury could reasonably find for the nonmoving party. If the Court concludes a fair-minded jury could not return a verdict in favor of the nonmoving party based on the evidence presented, it may enter a summary judgment. *Id.*; *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).

**II.     RELEVANT FACTS**

Plaintiff was employed by the Department of the Army Corps of Engineers from 1974 to 2003 (Court File No. 41, Affidavit of Hubert R. Fisher ("Fisher Aff.") ¶¶ 2, 23). Plaintiff learned he was infected with hepatitis C in 1989, then became symptomatic in 1997 (*id*. ¶¶ 3-4). Plaintiff informed his supervisor, Loyce Holley, that his disease required chemotherapy treatment (*id*. ¶ 4). Plaintiff states he "followed proper protocol in taking medical leave when I was too sick to work" (*id*.). On July 25, 1997, Mr. Holley informed Plaintiff he would need to bring a physician's excuse each time he missed any part of a day of work (*id*. ¶ 5).

Plaintiff states Mr. Holley would attach these doctor's notes to a form Plaintiff was required to submit entitled "Requests for Leave or Approved Absence" (*id*. ¶ 6). Plaintiff also states Mr. Holley would return these forms, with the doctor's note attached, to Plaintiff for his signature by leaving them on the table in the break room that was open to all employees, without any notification the documents had been placed on the table (*id*. ¶¶ 6-7). Plaintiff states sometimes days would go by before he discovered the forms on the table, and he objected to the supervisor placing them in open view (*id*. ¶¶ 7-8). However, Plaintiff states Mr. Holley continued this practice (*id*.).

Mr. Holley asserts he would put Plaintiff's doctors' notes in the personnel file in his office, which was under lock and key, but did state he left the forms out for Plaintiff to sign (Court File No.

3

32, Exh. D, Deposition of Keith Holley ("Holley Depo.") pp. 52-53). In his deposition, Mr. Holley admitted he had previously stated, during Defendant's investigation of Plaintiff's claims, he left both the forms and doctors' notes on the table, but didn't "recall doing that" (*id*. at 54-55).

Plaintiff recovered from his illness in late 1997, and received no treatment until 2001, when he became symptomatic again (Fisher Aff. ¶¶ 9-10). On August 7, 2001, Mr. Holley informed Plaintiff he would have to provide a physician's excuse again in order to miss work, and Plaintiff states Mr. Holley again left the paperwork, including the doctor's notes, on the break room table (*id*. ¶¶ 11-12). At least three of Plaintiff's coworkers, Mike Owens, Steve Tinker, and Richard Grudzinski, attest they saw Requests for Leave or Approved Absence forms, with excuses from Plaintiff's doctors attached, left out on the break room table by Mr. Holley during 2001 (Court File No. 32, Exh. A-C). On October 31, 2001, Mr. Holley required Plaintiff's excuses from his physicians to include the illness for which he was being treated (Fisher Aff. ¶ 14). One of Plaintiff's physicians declined to specify what he was treating Plaintiff for on his excuse form for a December 10, 2001 appointment, and Mr. Holley publicly posted a notice Plaintiff was "AWOL" in the break room (*id*. ¶ 15).

Because Plaintiff was employed by the federal government, any complaint of discrimination he wished to pursue against the government had to be filed in accordance with certain regulations that require an initial complaint of discrimination to be lodged with and processed by his government employer. *See Brown v. General Serv. Administration*, 425 U.S. 820, 833, 48 L. Ed. 2d 402, 96 S. Ct. 1961 (1976); 29 C.F.R. §§ 1614.101 *et seq*. Plaintiff filed a formal complaint of discrimination with Defendant's EEO program on January 30, 2002, alleging he was discriminated against on the basis of his disability, subjected to continuing harassment by his supervisor who failed

4

to keep his medical reports private, and subjected to disparate treatment because of his disability in that he was the only employee in his work unit who did not receive a performance or bonus award in 2001 (Fisher Aff. ¶ 17; Court File No. 31, Exh. B, Declaration of Marva Morris ("Morris Decl.") ¶ 2). Plaintiff later amended his complaint on June 11, 2002 to add a charge of reprisal(Morris Decl. ¶ 3). Defendant conducted a fact-finding conference regarding Plaintiff's complaint on June 11, 2002 and sent Plaintiff a copy of the investigative report and file on August 20, 2002 (*id*.) in accordance with 29 C.F.R. § 1614.108(f). Although Plaintiff was notified he was entitled to a hearing before an administrative judge under the regulations, he did not request one (*id*. ¶¶ 3-4). Defendant then issued a final finding of no discrimination on January 22, 2003 (*id*. ¶¶ 5) in accordance with 29 C.F.R. § 1614.110.

After Plaintiff filed his initial complaint with Defendant, Plaintiff's supervisor advised him to call Tom Hood, an upper-level supervisor in Lenoir City, Tennessee (Fisher Aff. ¶ 21). Mr. Hood then told Plaintiff he "needed to retire," and if he did so he would receive $25,000 in severance pay (*id*.). Plaintiff applied for voluntary separation incentive pay ("VSIP") on December 23, 2002, and his application was approved on January 31, 2003 (Court File No. 31, Exh. D, Declaration of Victoria A. Hooper ("Hooper Decl.") ¶ 4, *see also* Exh. A, B thereto). Plaintiff accepted the VSIP offer the next day, January 31, 2003, then requested retirement on February 11, 2003 (*id*., *see also* Exh. B, C thereto). Plaintiff retired on March 31, 2003 (Fisher Aff. ¶¶ 23, 24).

Plaintiff appealed Defendant's finding of no discrimination to the Equal Employment Opportunity Commission ("EEOC") on February 28, 2003 (Morris Decl. ¶ 5) in accordance with 29 C.F.R. § 1614.401. The EEOC issued a decision on September 28, 2004 holding Defendant discriminated against Plaintiff by disclosing his medical records (Fisher Aff. ¶25). Defendant filed

5

a motion for reconsideration, which the EEOC denied on January 14, 2005 (*id*. ¶¶ 26-27).  The EEOC also issued Plaintiff a right-to-sue letter on January 14, 2005 (Court File No. 1, Complaint, ¶ 13).

On March 8, 2005 Plaintiff moved to amend his complaint with Defendant to add a claim for constructive discharge, alleging the discriminatory actions of Defendant made his workplace so hostile he took early retirement (Fisher Aff. ¶ 29; Exh. B to Morris Decl.).  Defendant replied on March 9, 2005, agreeing the alleged constructive discharge was "like or related" to the original complaint (Exh. C to Morris Decl.).  However, Defendant did not agree to the amendment because it believed Plaintiff had not taken the steps necessary to amend his complaint within certain time limits as required by 29 C.F.R. § 1614.106(d) (*id*.).  Defendant gave Plaintiff the opportunity open a new complaint dealing with the constructive discharge issue and take part in EEO pre-complaint counseling pursuant to 29 C.F.R. § 1614.105 (*id*.).  Plaintiff did not take part in EEO pre-complaint counseling, nor did he file a new complaint, involving the alleged constructive discharge (Morris Decl. ¶¶ 8-11).

Plaintiff filed the instant lawsuit on April 11, 2005 alleging Defendant discriminated against him in violation of Title VII, the Rehabilitation Act, and the ADA, including a claim of constructive discharge (*see* Court File No. 1, Complaint).

### III.   DISCUSSION

While the parties' motions are related, their legal issues are distinct, therefore the Court will address each motion separately.

    **A.**    **Defendant's Motion for Partial Summary Judgment**

Defendant in its motion argues the Court must dismiss Plaintiff's claim for relief based on constructive discharge because Plaintiff has failed to exhaust his administrative remedies as to that claim (Court File No. 30). As detailed above, Plaintiff did not include a claim for constructive discharge in his initial complaint filed with Defendant's EEO program.[1] Additionally, Plaintiff did not contact Defendant to take part in pre-complaint EEO counseling or file a new complaint including this claim (Morris Decl. ¶¶ 8-11). Then, when Plaintiff moved to amend his existing complaint to add such a claim, Defendant denied this request (*see* Exh. C to Morris Decl.). Thus, there is no dispute this claim was neither counseled nor raised in Plaintiff's complaint; the only issue is whether Plaintiff's failure to include this claim must legally preclude Plaintiff from relying on this alleged constructive discharge in the present suit.

A plaintiff suing under federal civil rights laws must exhaust his administrative remedies before bringing the suit in federal court. "Federal courts do not have subject matter jurisdiction to hear Title VII claims unless the claimant explicitly files the claim in an EEOC charge or the claim can reasonably be expected to grow out of the EEOC charge." *Abeita v. TransAmerica Mailings, Inc.*, 159 F.3d 246, 254 (6th Cir. 1998). Similarly, filing of an EEOC charge is a condition precedent to bring a suit under the ADA. *Parry v. Mohawk Motors of Mich., Inc.*, 236 F.3d 299, 309 (6th Cir. 2000). Exhaustion also is required for a claim by a federal employee under the Rehabilitation Act. *Tuck v. HCA Health Servs. of Tenn., Inc.*, 7 F.3d 465, 471 (6th Cir. 1993) (*quoting Smith v. United States Postal Serv*. 742 F.2d 257, 261 (6th Cir. 1984)).

This exhaustion requirement applies to federal employees claiming discrimination by a

---

[1]Although neither party attached this initial complaint as an exhibit to their filings, Plaintiff concedes he did not explicitly include constructive discharge in this complaint.

government agency, and in those cases it includes exhausting the administrative remedies laid out in the regulations for federal employees cited above. *Dixon v. Ashcroft*, 392 F.3d 212, 217 (6th Cir. 2004) (*citing Benford v. Frank*, 943 F.2d 609, 612 (6th Cir. 1991)). One exhaustion requirement particular to federal employees is pre-complaint counseling, in which "[a]n aggrieved person must initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action." 29 C.F.R. § 1614.105.

It is undisputed Plaintiff retired on March 31, 2003. Therefore, Plaintiff would have had to raise the issue of a constructive discharge to Defendant within 45 days of that retirement, which would be the "effective date" of that action, in order to comply with 29 C.F.R. § 1614.105. Plaintiff did not attempt to raise the constructive discharge issue until he requested amendment of his complaint to include it on March 8, 2005 (Morris Decl. ¶¶ 9-11). Accordingly, Plaintiff failed to exhaust his administrative remedies by failing to complete pre-complaint counseling within the time limits as required by 29 C.F.R. § 1614.105.

Although to a lay person, this requirement may not seem reasonable, it has been settled law for quite some time. Where a plaintiff has failed to meet the counseling requirement the law indicates the court should dismiss the claim. *Horton v. Potter*, 396 F.3d 906, 910-11 (6th Cir. 2004)*; see also Benford*, 943 F.2d at 612. Because Plaintiff failed to exhaust his administrative remedies, the Court will **GRANT** Defendant's motion for partial summary judgment (Court File No. 30) and will **DISMISS** Plaintiff's claims based on a constructive discharge.

### B. Plaintiff's Motion for Partial Summary Judgment

Plaintiff in his motion for partial summary judgment argues there is no genuine issue of fact and the evidence he has submitted establishes Defendant violated the ADA by failing to keep his medical records confidential (Court File No. 33 at 1-2). Because the Rehabilitation Act incorporates the medical record confidentiality provision of the ADA, *see* 29 U.S.C. §§ 791(g), 794(d), the Court will presume Plaintiff is also moving for summary judgment on his Rehabilitation Act claims related to this disclosure.

### 1.  Statutory Scheme

The ADA prohibits an employer from discriminating against a "qualified individual with a disability."[2] 42 U.S.C. § 12112(a). An employer "may conduct voluntary medical examinations . . . which are part of an employee health program available to employees at that work site . . . [and] may make inquiries into the ability of an employee to perform job-related functions," but in doing so must comply with the statute's confidentiality requirements. 42 U.S.C. § 12112(d)(4)(B), (C). The confidentiality provision requires "information obtained regarding the medical condition or history of the applicant [to be] collected and maintained on separate forms and in separate medical files and [to be] treated as a confidential medical record . . ." 42 U.S.C. § 12112(d)(3)(B). Failure

---

[2]While the Sixth Circuit has expressly declined to evaluate the issue, *see Boise v. Capital Area Community Servs.*, 188 F.3d 506 (table, text at 1999 WL 618085) (6th Cir. Aug. 4, 1999), several courts have held a plaintiff need not be disabled within the meaning of the ADA to proceed with a cause of action based on violation of 42 U.S.C. § 12112(d). *See Cossette v. Minnesota Power & Light*, 188 F.3d 964, 969-70 (8th Cir. 1999) (need not be disabled to bring claim for violation of medical records confidentiality provision); *Fredenburg v. Contra Costa County Dep't of Health Servs.*, 172 F.3d 1176, 1181-82 (9th Cir. 1999) (need not be disabled to bring claim for violation of preemployment, post-offer, or employee examination provisions); *Griffin v. Steeltek, Inc.*, 160 F.3d 591, 593-94 (10th Cir. 1998) (need not be disabled to bring claim for violation of preemployment examination provision); *Roe v. Cheyenne Mountain Conference Resort, Inc.*, 124 F.3d 1221, 1229 (10th Cir, 1997) (need not be disabled to bring claim for violation of employee examination provision). At least one district court in this circuit has followed those cases. *See Lentz v. City of Cleveland*, 410 F. Supp. 2d 673 (N.D. Ohio 2006).

to comply with that confidentiality requirement constitutes discrimination in violation of the ADA. 42 U.S.C. § 12112(d)(1). Plaintiff in his motion for summary judgment cites a regulation promulgated under the ADA as support for his cause of action. *See* 29 C.F.R. § 1630.14(c). This regulation essentially mirrors the statutory confidentiality provisions found in 42 U.S.C. § 12112(d)(3)(B), therefore the Court will analyze Plaintiff's claim using caselaw developed under the statutory confidentiality requirements rather than the regulation.

### 2. Plaintiff's Submitted Evidence

In support of his motion, Plaintiff presents the virtually identical affidavits of his coworkers Mike Owens, Steve Tinker, and Richard Grudzinski, each of whom attests during 2001 he saw Requests for Leave or Approved Absence forms, with excuses from Plaintiff's doctors attached, left out on the break room table by Mr. Holley (Court File No. 32, Exh. A-C). Plaintiff also includes excerpts from the deposition of Mr. Holley, during which he admitted leaving the forms on the break room table for Plaintiff to sign (Holley Depo. at 52-55). The Court would note Mr. Holley also denied the doctors' notes were attached to the forms left in the break room during this deposition (*id.*). Mr. Holley admitted his deposition testimony was contradictory to a statement he made during Defendant's investigation of Plaintiff's claims, during which he stated he left both forms and excuses in the break room, but gave no explanation for this contradiction (*id.* at 54-55).

### 3. Law Regarding Confidentiality Requirements

The United States Court of Appeals for the Sixth Circuit ("Sixth Circuit") did not analyze the requirements for a cause of action under this section in the one reported case it has considered squarely on point. *See Satterfield v. Tennessee*, 295 F.3d 611, 615-19 (6th Cir. 2002) (holding defendants were not entities required to comply with the ADA). However, the Sixth Circuit has

10

affirmed a district court decision and praised its reasoning on a violation of the confidentiality provision, with limited correction, in an unpublished decision. *See Yoder v. Ingersoll-Rand Co.*, 172 F.3d 51 (table, text at 1998 WL 939885) (6th Cir. Dec. 22, 1998). While Defendant raises several issues that might be grounds to deny Plaintiff's motion in its brief, the *Yoder* opinion is directly on point and is dispositive of Plaintiff's motion.

The *Yoder* case was remarkably similar to the one at hand. In that case, the plaintiff filled out a two-sided form seeking to take a disability leave of absence; the form was structured so the employee filled out one side of the form then forwarded it to his doctor, who filled out the other side and returned the form to the employer. *Yoder v. Ingersoll-Rand Co.*, 31 F.Supp.2d 565, 567 (N.D. Ohio 1997). The plaintiff's doctor filled out the form, including the plaintiff's diagnosis of "HIV-positive/AIDS," but did not fill in all required information. The employer sent the form back to the doctor for completion, but it was returned to sender (the employer). The form was returned to the employer in such a manner that it was routed through the general mail room, and eventually it was read by a mail clerk, the plaintiff's supervisor, and the plaintiff's mother in attempts to return it to the plaintiff. *Id.* at 567-68.

The plaintiff sued alleging in part the employer violated the portion of the ADA requiring employers to keep confidential records of "voluntary medical examinations . . . which are part of an employee health program available to employees at that work site." Since the records at issue were not part of such an examination, but rather were filled out by his personal physician outside of any employee health program available at the work site,[3] the court granted the defendant's motion for

---

[3]The Sixth Circuit's only relevant correction of the district court's ruling was of the district court's holding "there was no violation of § 12112(d) because the information 'was not gained in a voluntary, *on-site* medical examination.'" 1998 WL 939885 at *1 (emphasis added). The Sixth

11

summary judgment. *Id.* at 569. It is worth noting the district court rejected the plaintiff's argument the confidentiality provisions in the ADA are meant to require employers to keep all medical information they receive confidential. Instead, the court held

> Congress' evident intent in passing the above-cited confidentiality provisions was to protect disabled employees from job discrimination by ensuring that the results of job-related medical examinations would not be kept in their personnel files. The statute goes no further than requiring employers to keep that limited class of medical records confidential, and this Court will not engraft onto the law requirements that Congress has not made.

*Id.*

Much as the *Yoder* court rejected the plaintiff's assertion forms he and his doctor filled out in order to obtain medical leave fell into a statutory category of medical documents his employer was required to protect under the ADA, the Court must here reject Plaintiff's argument Defendant should have kept confidential the forms and doctor's notes Defendant left out on the break room table. Following *Yoder*, the Court holds the ADA, in subsection 12112(d)(4)(C), sets out only two circumstances in which an employer is required to keep medical information it obtains confidential, those listed in subsection 12112(d)(4)(B): (1) where the employer has "conduct[ed] voluntary medical examinations . . . which are part of an employee health program available to employees at that work site" and (2) where the employer has made "inquiries into the ability of an employee to perform job-related functions." 42 U.S.C. § 12112(d)(4)(B), (C).

Plaintiff has not alleged the information Defendant disclosed was obtained in either of the two manners set out above. Because the statute does not require an employer to keep confidential

---

Circuit found this error to be harmless, but noted "the language of § 12112(d) covers 'voluntary medical examinations, including voluntary medical histories which are part of an employee health program available to employees at that work site.' It is the employee health program, and not the medical examination, that must be available to employees at the work site." *Id.*

12

medical information it obtains in other manners, such as here and in *Yoder*, where the employee has submitted medical documentation to support a request for sick leave, an employer who discloses such information will not violate this section of the ADA.[4] While Defendant's actions in leaving Plaintiff's leave forms and doctor's notes in a public area may not have been kind or appropriate for a workplace, Plaintiff has not shown Defendant violated the limited confidentiality provision of the ADA.

Because of the foregoing, the Court must hold Plaintiff has not met his burden on summary judgment of proving he is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c). The Court therefore will **DENY** Plaintiff's motion for partial summary judgment on his claims under the ADA and Rehabilitation Act based on disclosure of confidential information (Court File No. 33).

## IV.  CONCLUSION

For all of the foregoing reasons, the Court will **GRANT** Defendant's motion for partial summary judgment and will **DISMISS** Plaintiff's claims based on constructive discharge (Court File No. 30) and will **DENY** Plaintiff's motion for partial summary judgment on his claims for disclosure of confidential information under the ADA and Rehabilitation Act (Court File No. 32).

An Order shall enter.

---

[4]The case cited by Defendant, *Doe v. USPS*, 317 F.3d 339 (D.C. Cir. 2003), used similar reasoning as that cited from the district court decision in *Yoder,* holding confidentiality was required only in the two situations cited above. However, the court in *Doe* found a form submitted for leave under the Family and Medical Leave Act was essentially an inquiry by the employer into whether the employee was able to perform job-related functions, the second situation listed in subsection 12112(d)(4)(B), and therefore the employer was required to keep it confidential under subsection 12112(d)(4)(C). *Id.* at 345.

13

/s/
**CURTIS L. COLLIER
CHIEF UNITED STATES DISTRICT JUDGE**

14