UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

HUBERT R. FISHER,                       )
                                        )
            Plaintiff,                  )
                                        )         No. 1:05-CV-102
v.                                      )
                                        )         Judge Curtis L. Collier
                                        )
DR. FRANCES HARVEY, Secretary of the    )
Army,                                   )
                                        )
            Defendant.                  )

## **MEMORANDUM**

This is a case arising under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e *et seq.*, and Section 501 of the Rehabilitation Act of 1973 ("Rehabilitation Act"), as amended, 29 U.S.C. § 791, *et seq*. Before the Court is the second motion for summary judgment filed by Defendant Dr. Francis A. Harvey, Secretary of the Army ("Defendant") (Court File No. 67).

Defendant filed a memorandum and exhibits in support of his motion (Court File No. 68), and Plaintiff Hubert R. Fisher ("Plaintiff") filed a response and additional exhibits in opposition (Court File Nos. 69-70). The Court has considered all of the foregoing in making its decision regarding the motion for summary judgment. For the following reasons, the Court will **DENY** Defendant's motion for summary judgment (Court File No. 67).

**I.    STANDARD OF REVIEW**

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories,

and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Initially, the burden is on the moving party to conclusively show no genuine issues of material fact exist, *Leary v. Daeschner*, 349 F.3d 888, 897 (6th Cir. 2003), and the Court must view the evidence and draw all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986). However, the nonmoving party is not entitled to a trial merely on the basis of allegations, but must come forward with some significant probative evidence to support its claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986). If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to summary judgment. *Id.* at 323, 106 S. Ct. at 2552.

The Court determines whether sufficient evidence has been presented to make the issue of fact a proper jury question, but does not weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986); *Weaver v. Shadoan*, 340 F.3d 398, 405 (6th Cir. 2003). The standard for summary judgment mirrors the standard for directed verdict. *Anderson*, 477 U.S. at 250, 106 S. Ct. at 2511. The Court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52, 106 S. Ct. at 2512. There must be some probative evidence from which the jury could reasonably find for the nonmoving party. If the Court concludes a fair-minded jury could not return a verdict in favor of the nonmoving party based on the evidence presented, it

may enter a summary judgment. *Id.*; *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).

## II. <u>RELEVANT FACTS AND PROCEDURAL HISTORY</u>

The Court set out in detail the facts of this case in ruling on the parties' prior partial motions for summary judgment (*see* Court File Nos. 49, 50). The Court here will summarize only those facts necessary to decide the present motion.

Plaintiff was employed by the Department of the Army Corps of Engineers from 1974 to 2003 (Court File No. 41, Affidavit of Hubert R. Fisher ("Fisher Aff.") ¶¶ 2, 23). Plaintiff learned he was infected with hepatitis C in 1989, then became symptomatic in 1997, requiring chemotherapy treatment (*id.* ¶¶ 3-4). Plaintiff's supervisor, Loyce Holley, required Plaintiff to bring a physician's excuse each time he missed any part of a day of work (*id.* ¶ 5).

Holley would attach these doctor's notes to a form Plaintiff was required to submit entitled "Requests for Leave or Approved Absence" (*id.* ¶ 6). Holley would return these forms, with the doctor's note attached, to Plaintiff for his signature by leaving them on the table in the break room that was open to all employees, without any notification the documents had been placed on the table (*id.* ¶¶ 6-7). Sometimes days would go by before Plaintiff discovered the forms on the table, and he objected to the supervisor placing them in open view (*id.* ¶¶ 7-8). However, Holley continued this practice (*id.*).

Holley in his deposition stated he left the forms out for Plaintiff to sign (Court File No. 32, Exh. D, Deposition of Keith Holley ("Holley Depo.") pp. 52-53). Holley also admitted he stated during the administrative proceedings he left both the forms and doctors' notes on the table, but

3

didn't "recall doing that" (*id*. at 54-55).

Plaintiff recovered from his illness in late 1997, and received no treatment until 2001, when he became symptomatic again (Fisher Aff. ¶¶ 9-10). On August 7, 2001, Holley informed Plaintiff he again would have to provide a physician's excuse in order to miss work, and Holley again left the paperwork, including the doctor's notes, on the break room table (*id*. ¶¶ 11-12; Court File No. 70, Exh. E). On October 23, 2001, Holley informed Plaintiff his excuses from physicians must include "the specific nature of your illness or injury that prevented you from reporting to work" (Fisher Aff. ¶ 14; Court File No. 70, Exh. F).

Because Plaintiff was employed by the federal government, any complaint of discrimination he wished to pursue against the government had to be filed in accordance with certain regulations that require an initial complaint of discrimination to be lodged with and processed by his government employer. *See Brown v. General Serv. Administration*, 425 U.S. 820, 833, 48 L. Ed. 2d 402, 96 S. Ct. 1961 (1976); 29 C.F.R. § 1614.101 *et seq*. Plaintiff filed a formal complaint of discrimination with Defendant's EEO program on January 30, 2002, alleging he was discriminated against on the basis of his disability, subjected to continuing harassment by his supervisor who failed to keep his medical reports private, and subjected to disparate treatment because of his disability in that he was the only employee in his work unit who did not receive a performance or bonus award in 2001 (Fisher Aff. ¶ 17; Court File No. 68, Exh. B, Declaration of Marva Morris ("Morris Decl.") ¶ 2). Plaintiff later amended his complaint on June 11, 2002 to add a charge of reprisal (Morris Decl. ¶ 3). After conducting administrative proceedings, Defendant issued a final finding of no discrimination on January 22, 2003 (*id*. ¶ 5) in accordance with 29 C.F.R. § 1614.110.

Plaintiff retired on March 31, 2003 with voluntary separation incentive pay ("VSIP") (Court

4

Case 1:05-cv-00102   Document 71   Filed 08/14/06   Page 4 of 12   PageID #: 18

File No. 68, Exh. A, C, Deposition of Hubert R. Fisher ("Fisher Depo.") at 46; Fisher Aff. ¶¶ 23, 24). Plaintiff appealed Defendant's finding of no discrimination to the Equal Employment Opportunity Commission ("EEOC") on February 28, 2003 (Morris Decl. ¶ 5) in accordance with 29 C.F.R. § 1614.401. The EEOC issued a decision on September 28, 2004 holding Defendant discriminated against Plaintiff by disclosing his medical records (Fisher Aff. ¶ 25). Defendant filed a motion for reconsideration, which the EEOC denied on January 14, 2005 (*id*. ¶¶ 26-27). The EEOC also issued Plaintiff a right-to-sue letter on January 14, 2005 (Court File No. 1, Complaint, ¶ 13).

Plaintiff filed the instant lawsuit on April 11, 2005 alleging Defendant discriminated against him in violation of Title VII, the Rehabilitation Act, and the ADA (*see id.*).

The Court previously granted Defendant's prior motion for partial summary judgment and dismissed all of Plaintiff's claims based on constructive discharge (Court File No. 50). The Court also denied Plaintiff's motion for summary judgment on his claims for disclosure of confidential information under the ADA and Rehabilitation Act (*Id.*).

Following the Court's ruling, Plaintiff moved to amend his complaint to add a claim Defendant utilized his doctor's notes to determine whether he was able to perform job-related functions (Court File No. 52). This motion was granted (Court File No. 64), and Plaintiff so amended his complaint on April 28, 2006 (Court File No. 65).

Defendant now moves for summary judgment on Plaintiff's remaining claims in this amended complaint.

5

## III. DISCUSSION

### A. Disclosure of Inquiry into Ability to Perform Job-Related Functions

Because the Rehabilitation Act incorporates the medical record confidentiality provision of the ADA, *see* 29 U.S.C. §§ 791(g), 794(d), the Court will consider Plaintiff's Rehabilitation Act claims related to this disclosure in connection with his ADA claims.

Plaintiff claims Defendant utilized the doctors' notes it required him to bring to his supervisor to determine whether he was able to perform job-related functions and it had a duty to keep them confidential (Court File No. 65). Defendant argues these doctors' notes do not fit the statutory definition of a fitness for duty examination, therefore it had no duty to keep them confidential.

#### 1. Statutory Scheme

The ADA prohibits an employer from discriminating against a "qualified individual with a disability." 42 U.S.C. § 12112(a). An employer ". . . may make inquiries into the ability of an employee to perform job-related functions," but in doing so it must comply with the statute's confidentiality requirements. 42 U.S.C. § 12112(d)(4)(B), (C). The confidentiality provision requires "information obtained regarding the medical condition or history of the applicant [to be] collected and maintained on separate forms and in separate medical files and [to be] treated as a confidential medical record . . ." 42 U.S.C. § 12112(d)(3)(B). Failure to comply with that confidentiality requirement constitutes discrimination in violation of the ADA. 42 U.S.C. § 12112(d)(1).

The Court in its previous memorandum opinion fully analyzed the requirements for a cause

6

of action under this section of the ADA (*see* Court File No. 49). Based on *Yoder v. Ingersoll-Rand Co.*, 172 F.3d 51 (table, text at 1998 WL 939885) (6th Cir. Dec. 22, 1998), the Court held the ADA requires employers to keep only two categories of employee medical information confidential: (1) where the employer has "conduct[ed] voluntary medical examinations . . . which are part of an employee health program available to employees at that work site" and (2) where the employer has made "inquiries into the ability of an employee to perform job-related functions." (Court File No. 49 at 12) (quoting 42 U.S.C. § 12112(d)(4)(B), (C)).

### 2. Analysis

In response to the Court's prior holding Plaintiff had not shown Defendant violated the ADA because he did not allege his medical documents fell into either of the two categories above, Plaintiff now argues these documents in fact fall into the second category. Plaintiff contends Defendant's requirement he present doctors' notes including the illness for which he was being treated amounted to an "inquir[y] into the ability of an employee to perform job-related functions," and its failure to keep the information obtained from that inquiry confidential violated the ADA. 42 U.S.C. § 12112(d)(4)(B), (C).

In support of this theory, Plaintiff presents as evidence sworn testimony by his supervisor, Holley, during an administrative hearing (Court File No. 70, Exh. A; Court File No. 68, Exh. K). After being asked whether Plaintiff requested an accommodation in his work in 1999, Holley stated he "reviewed the doctor's statements that [Plaintiff] had to see if he was fit for duty, and he was." When again asked if Plaintiff made any requests for accommodation, Holley stated, "Yes, I viewed his doctor's statement showing that he would be late some mornings due to the treatments that he

7

was having – the chemotherapy" and he did try to accommodate Plaintiff (*id.*).[1]

Plaintiff also submits letters he received beginning August 7, 2001 regarding excessive absenteeism, requiring him to submit a doctor's statement for future absences, that must include "(1) a statement that your illness or injury that prevented you from working and (2) the day(s) and time(s) during which your illness or injury prevented you from working" (Court File No. 70, Exh. E). Defendant then sent two later letters, dated October 23, 2001 and December 7, 2001, requiring Plaintiff include "a statement indicating the specific nature of your illness or injury that prevented you from reporting to work, (2) the day(s) and time(s) during which your illness or injury prevented you from working, and (3) indicate whether the doctor personally saw you" (*id.*, Exh. F, G).

Plaintiff argues the above would be sufficient for a jury to conclude Defendant was inquiring into his ability to perform job-related duties, and that inquiry triggered a duty to keep those documents confidential.

Defendant argues its requirements for doctors' notes were not equivalent to a "fitness for duty examination" of Plaintiff, therefore it was not required to keep the documents at issue here confidential. Defendant relies on the regulations covering medical examinations of civil service employees, 5 C.F.R. §§ 339.301-306. These regulations were not promulgated under the ADA, and they do not pertain to the issue at hand.

The question here is whether Defendant was using the notes from Plaintiff's doctors as "inquiries into the ability of an employee to perform job-related functions," 42 U.S.C. § 12112(d)(4)(B), (C), and the relevant regulation is 29 C.F.R. § 1630.14. This regulation allows an

---

[1] Defendant points out Holley made this statement regarding events in 1999, prior to the relevant time period during which Plaintiff was required to submit detailed doctors' notes with his sick leave requests, which began in 2001.

employer to require examinations and inquiries into the ability of an employee to perform job-related functions but requires that such inquiries be "job-related and consistent with business necessity." 29 C.F.R. § 1630.14(c).

Therefore, Plaintiff must show Defendant's requirement he bring doctors' notes indicating the specific nature of his illness or injury was an inquiry "into the ability of an employee to perform job-related functions" that was "job-related and consistent with business necessity." *Id.*

Viewed in the light most favorable to Plaintiff, the non-moving party, the facts he has presented meet his burden. The United States Court of Appeals for the Sixth Circuit ("Sixth Circuit") has not squarely addressed what constitutes an inquiry into an employee's ability to perform job-related functions[2], but a case cited by Defendant in its prior motion for summary judgment, *Doe v. USPS*, 317 F.3d 339 (D.C. Cir. 2003), is directly on point. In that case, the United States Court of Appeals for the District of Columbia found a form submitted for leave under the Family and Medical Leave Act was essentially an inquiry by the employer into whether the employee was able to perform job-related functions, and therefore the employer was required to keep it confidential under subsection 12112(d)(4)(C). *Id.* at 345. Similarly, Plaintiff submitted requests for leave with doctors' notes attached indicating "the specific nature of [his] illness or injury that prevented [him] from reporting to work." By requiring him to present doctors' statements "indicating the specific nature of [his] illness or injury that prevented [him] from

---

[2]The Court finds *Doe* to be closer to the present facts than the only Sixth Circuit case in this arena, *Yoder*. In *Yoder*, the plaintiff sought disability leave, and the employer disclosed the form his physician was required to fill out for such leave. However, the plaintiff in *Yoder* did not make any claim this was a disclosure of "inquiries into the ability of an employee to perform job-related functions," 42 U.S.C. § 12112(d)(4)(B), (C), and the Sixth Circuit did not consider whether those facts constituted such a claim. 172 F.3d 51.

9

reporting to work, (2) the day(s) and time(s) during which [his] illness or injury prevented [him] from working," (Court File No. 70, Exh. F, G), Defendant was performing an inquiry "into his] ability . . . to perform job-related functions" that was "job-related and consistent with business necessity." 42 U.S.C. § 12112(d)(4)(B), (C); 29 C.F.R. § 1630.14(c). The ADA clearly required Defendant to keep such information confidential. *Id.*

Plaintiff has met his burden of bringing forth significant probative evidence to support his claim Defendant disclosed information the ADA requires employers to keep confidential. *Celotex*, 477 U.S. at 324. Therefore, the Court will **DENY** Defendant's motion for summary judgment on this ground. Fed. R. Civ. P. 56(c).

> **B.** **Failure to Exhaust Administrative Remedies as to Inquiry into Ability to Perform Job-Related Functions Claim**

Defendant also argues the Court must dismiss Plaintiff's claim for relief based on disclosure of an inquiry into his ability to perform job-related functions because Plaintiff has failed to exhaust his administrative remedies as to that claim.

A plaintiff suing under federal civil rights laws must exhaust his administrative remedies before bringing the suit in federal court. "Federal courts do not have subject matter jurisdiction to hear Title VII claims unless the claimant explicitly files the claim in an EEOC charge or the claim can reasonably be expected to grow out of the EEOC charge." *Abeita v. TransAmerica Mailings, Inc.*, 159 F.3d 246, 254 (6th Cir. 1998). Filing an EEOC charge is a condition precedent to bring a suit under the ADA. *Parry v. Mohawk Motors of Mich., Inc.*, 236 F.3d 299, 309 (6th Cir. 2000). Exhaustion also is required for a claim by a federal employee under the Rehabilitation Act. *Tuck v. HCA Health Servs. of Tenn., Inc.*, 7 F.3d 465, 471 (6th Cir. 1993) (*quoting Smith v. United States Postal Serv*. 742 F.2d 257, 261 (6th Cir. 1984)). A court may dismiss a claim where the plaintiff

10

has failed to meet the counseling requirement. *Horton v. Potter*, 396 F.3d 906, 910-11 (6th Cir. 2004); *see also Benford v. Frank*, 943 F.2d 609, 612 (6th Cir. 1991).

This exhaustion requirement applies to federal employees claiming discrimination by a government agency, and in those cases it includes exhausting the administrative remedies laid out in the regulations for federal employees cited above. *Dixon v. Ashcroft*, 392 F.3d 212, 217 (6th Cir. 2004) (*citing Benford*, 943 F.2d at 612).

It is unclear from the record whether Plaintiff specifically included a claim for disclosure of such an inquiry in his initial complaint filed with Defendant's EEO program. Defendant asserts Plaintiff is just now changing his claim to a "fitness for duty" issue rather than a sick leave disclosure issue, but did not ever raise this issue in his initial complaint. Defendant does not cite to the record in making this assertion. Plaintiff contends during the administrative proceedings, the focus was the disclosure of the doctors' excuses, and his supervisor acknowledged he used those documents to determine whether he was fit for duty, ultimately concluding he was (Court File No. 70, Exh. A; Court File No. 68, Exh. K). Neither party has attached this initial complaint or other administrative records as an exhibit to their filings, so the Court cannot determine whether this issue was exhausted. The Court finds there is a dispute of material fact on whether or not this claim was counseled and raised in Plaintiff's initial EEO complaint.

Because the initial burden on summary judgment is on the moving party to conclusively show no genuine issues of material fact exist, *Leary*, 349 F.3d at 897, and Defendant has not met this initial burden, the Court will **DENY** its motion for summary judgment on the grounds of Plaintiff's failure to exhaust administrative remedies.

**IV.    CONCLUSION**

For all of the foregoing reasons, the Court will **DENY** Defendant's second motion for summary judgment (Court File No. 67).

An Order shall enter.

/s/
**CURTIS L. COLLIER
CHIEF UNITED STATES DISTRICT JUDGE**